Jehiel Hymes, Respondent, *v.* William Esty et al., Executors, etc., Appellants.

In an action for breach of a covenant of quiet enjoyment in a deed of a village lot, it appeared that plaintiff was evicted from a strip of the lot which had been prior to the conveyance dedicated by a former owner to the public use as a street. Plaintiff was allowed to prove, under objection and exception, as his measure of damages the fee value of the strip taken. *Held,* error; as the damages lawfully recoverable in such case cannot exceed the eviction, and plaintiff had not thereby been deprived of his fee, a public easement simply having been taken.

The proper measure of damages in such case is the depreciation in value, if any, of the lot at the time of the eviction, caused by the existence of the easement with interest from that time, and plaintiff's costs in the action which resulted in the eviction.

Reported on a former appeal, 116 N. Y. 501.

(Argued April 26, 1892; decided May 24, 1892.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made July 7, 1891, which affirmed a judgment in favor of plaintiff, entered upon a verdict and also affirmed an order denying a motion for a new trial.

This action was brought to recover damages for the alleged breach of a covenant of quiet enjoyment in a deed executed by Joseph Esty, defendants' testator, to Byron A. Todd, plaintiff's grantor.

The facts, so far as material, are stated in the opinion.

*Charles A. Collin* for appellants. The trial court erred in applying the full measure of damages applicable in cases of total failure of title. (*In re City of Buffalo,* 15 N. Y. Supp. 775; *Huyck* v. *Andrews,* 113 N. Y. 81; *Moore* v. *Johnston,* 87 Ala. 220; Boone on Real Prop. § 311; 4 Am. & Eng. Cyc. Law, 472; Tied on Real Prop. § 851; *Fitzhugh* v. *Crogan,* 2 J. J. Mar. 429; *Lewis* v. *Jones,* 1 Penn. St. 236; *Cortelyou* v. *Van Brundt,* 2 Johns. 357; *Lamb* v. *Danforth,* 59 Me. 322; Sedg. on Dam. §§ 951, 972; 2 Sutherland on Dam. 326; Rawle on Cov. [4th ed.] 289–291; 3 Washb. on Real Prop.

[4th ed.] 495 ; *Foster* v. *Foster,* 62 N. H. 46, 55 ; *Whitbeck* v. *Cook,* 15 Johns. 483 ; *Roberts* v. *Sadler,* 104 N. Y. 234.)

*F. E. Tibbetts* for respondent. The measure of damages proven by plaintiff was the correct measure. (*Hunt* v. *Rapplee,* 44 Hun, 149 ; *Morris* v. *Phelps,* 5 Johns. 49 ; *Giles* v. *Dugro,* 1 Duer, 331 ; *Mohr* v. *Parmelee,* 11 J. & S. 320, 332 ; *Wharton* v. *Wharton,* 32 N. W. Rep. 890 ; *Cowperthwaite* v. *Sheffield,* 3 N. Y. 248 ; *Mabbett* v. *White,* 12 id. 442 ; *Tiemeyer* v. *Turnquist,* 85 id. 516 ; *Sherman* v. *Beader,* 23 Wkly. Dig. 374 ; *Cary* v. *White,* 59 N. Y. 336 ; *Quinby* v. *Strauss,* 90 id. 664.)

MAYNARD, J. The plaintiff is the owner of a lot in the city of Ithaca, conveyed to him in 1876, with covenants of warranty for quiet enjoyment. The defendant's testator conveyed the same premises, with like covenants, to the plaintiff's grantor in 1869. The plaintiff claims to have been evicted in 1881 from a triangular strip, twelve feet and eleven inches wide upon the front, and containing two hundred and eighty-three square feet out of eighty-two hundred and fifty square feet in the whole lot. The eviction complained of consisted of a recovery by the village of Ithaca of a judgment against the plaintiff, adjudging that he be perpetually enjoined from building or maintaining a fence across this strip, or from in any way interfering with its use and enjoyment as a public street of such village.

It appears from the findings of the court upon the trial of the action in which such judgment was rendered, that when the defendant's testator, or his grantor, owned the property, and before 1860, this strip had been dedicated by the owner to the public use as a street or passageway, and had been accepted, improved and maintained by the village, and used and occupied as a public street or passageway for more than twenty-five years prior to 1882.

The claim of the plaintiff was that, in 1869, when his grantor purchased of Esty, and also in 1876, when plaintiff

purchased, this strip was not used as a street; that there was then no open visible highway there, but that the strip was fenced across upon the front and enclosed with the rest of the lot, and that there was nothing upon the premises to indicate that it was part of a public street, or to put him upon inquiry in regard to it.

This court held, upon a former appeal (116 N. Y. 501), that if this claim was sustained by proofs to the satisfaction of the jury, there had been such a breach of the covenant of quiet enjoyment in the deed from Esty to the plaintiff's grantor as would support this action.

It was held that the case was taken out of the ordinary rule that the existence of a public highway at the time of the conveyance of lands with covenant for quiet enjoyment, or against incumbrances, is not a breach of such covenant. It was there declared that such rule was limited to cases where the public easement was open and visible and in actual use, and had no application to cases like the present, where, if the plaintiff's contention is true, there was, at the time of the purchase, no indication of the existence of a highway. That decision proceeded upon sound and just principles, and we see no occasion to restrict or modify it in any respect.

Upon the last trial, the case was submitted to the jury upon this issue strictly in accordance with the views expressed in the opinion of this court, and a verdict was returned for the plaintiff. A new and important question, however, is now raised by the counsel for the appellants, which is, that in making his proofs, the plaintiff was not confined to the correct measure of damages. He was allowed to prove, under defendant's objection, the fee value of the strip taken, and was not restricted to the depreciation in the value of the premises caused by its appropriation to the public uses of a highway. We think this decision of the trial court was erroneous.

The damages lawfully recoverable in such cases may be commensurate with the eviction, but cannot exceed it. The plaintiff has not been deprived of the fee; nothing has been taken from him but a public easement; the right of free and unmolested

passage by the people with their property over the land, which is quite a different thing in law from the taking of the land itself. The existence of such a servitude upon an estate does not affect the general rights of property of the owner in the same. All such remain and may be asserted by him in all lawful ways, subject to the enjoyment of the existing easement.

The owner of the soil over which a highway has been opened may make any and all uses of the land to which it can be applied, and have all the profits which can be derived from it consistently with its use by the public as a street. He may maintain trespass or ejectment against an intruder, and it has been held that he may sink a drain or water-course below the surface, if he does not in any manner infringe upon the rights of the public. In another case it was held that he might have an action of tort against one who erects his house upon the line of the street and extends his bay-window over the land of the highway, though it be so high above the passing vehicles as not to affect the travel injuriously. (Washburn on Easements and Servitudes [3d ed.] pp. 226, 265.) To such an extent have the rights of the land owner been recognized and protected that it was held by this court in *Robert* v. *Sadler* (104 N. Y. 229), that in the work of constructing or repairing a street the public authorities could not authorize material to be taken from the owner's land, over which the street was laid out, for the purpose of improving or grading portions of the street elsewhere, beyond what it might be necessary to remove for the purpose of constructing and maintaining the street in proper condition over the premises of such owner.

In short, with respect to the land in question, the plaintiff can exercise all the prerogatives of owner, except that he can do nothing which will obstruct or interfere with the free and uninterrupted right of passage by the public, or the action of the proper authorities in making, improving and maintaining the highway, with all its necessary incidents and privileges, and when the street is discontinued he will hold the land free from the incumbrance. It cannot be said that these rights are merely nominal and have no intrinsic value. We have recently

held *In re City of Buffalo* (131 N. Y. 293), affirming same case (15 N. Y. Supp. 775), that the fee remaining in the owner of lands, upon which a public street exists, is of very considerable value and a large award of damages, was sustained where the city sought to appropriate the fee. If the city of Ithaca should propose to condemn the fee of this land, providing it had the power to do so, it is not at all improbable that the plaintiff would be found in court insisting, and very properly, too, that it had a substantial value to him, for which he should be adequately compensated.

It follows that the plaintiff should have been limited in his proof of damages to the depreciation or difference in value of his property at the time of the eviction in 1881, caused by the existence and opening of a public street across his lands. It is the manner in which this easement affects the entire premises purchased, which constitutes his loss, if any. It may have proved to be a benefit rather than an injury. It not infrequently happens that a lot owner will consent to the laying out of a street across his lands, because of the convenience of access it will afford, or the creation of a new frontage for building lots, or some other compensatory advantage which it brings. If the plaintiff's entire lot is less valuable or marketable on account of the encroaching street, to that extent he should be remunerated; but beyond that there is neither reason nor justice in a demand for payment. In other words, the same rule should be applied as where a covenant against incumbrances has been broken by the existence of an easement. In such cases it was held by this court in *Huyck* v. *Andrews* (113 N. Y. 81) that the proper measure of damages was the difference between the value of the land without and with the easement. Earl, J., in delivering the opinion of the court, refers to the case of *Whitbeck* v. *Cook* (15 John. 483), where it was held that the existence of a public highway was not a breach of a covenant for quiet enjoyment, and says that "the *ratio decidendi* is equally applicable" to a covenant against incumbrances and where the breach consists of the existence of a public easement, which is excepted from the operation of

the rule laid down in *Whitbeck* v. *Cook*, we think there can be no difference in principle in the measure of damages allowed.

The cases prescribing the rule of damages where there has been an entire failure of title to the premises granted, or some definite portion of them, or a total deprivation of the right of possession and enjoyment, have no application. If the eviction has been from all the lands conveyed, the recovery has been limited to the purchase-price paid and interest from the time of dispossession; if from a definite part capable of physical ascertainment and boundary, then to such part of the original price as bears the same ratio to the whole consideration that the value of the land to which the title has failed bears to the value of the whole premises. (*Staats* v. *Ten Eyck*, 3 Caines, 111; *Pitcher* v. *Livingston*, 4 Johns. 1; *Morris* v. *Phelps*, 5 id. 49; *Guthrie* v. *Pugsley*, 12 id. 126; *Wager* v. *Schuyler*, 1 Wend. 554; *Kinney* v. *Watts*, 14 id. 38; *Giles* v. *Dugro*, 1 Duer, 331; *Mohr* v. *Parmelee*, 11 J. & S. 320; *Kelly* v. *Dutch Church*, 2 Hill, 105; *Baxter* v. *Ryerss*, 13 Barb. 267; *Adams* v. *Conover*, 22 Hun, 424; *Hunt* v. *Raplee*, 44 id. 149.)

This rule makes the orignal agreement of the parties the inflexible measure of value and seems to have had a very ancient origin, having been adopted at a time when land was not regarded as possessed of a market value. (Sedgwick on Damages [8th ed.], § 951.)

It is necessarily somewhat arbitrary and unjust in its operation and ordinarily excludes the benefits to which the grantee would seem to be entitled accruing from a good bargain, or a rise in the market value, or on account of expenditures made for permanent improvements, unless the latter may be deemed a part of the price paid for the property. We cannot find that it has ever directly received the approval of this court. In *Furniss* v. *Ferguson* (15 N. Y. 437), SELDEN, J., refers to the rule as a strictly equitable principle, which he deemed applicable to the case of a sale of a judgment, where there was a warranty of title, but there the warranty was expressly limited to the consideration paid, and the majority of the court

declined to assent to his dicta upon the subject. In *Taylor v. Barnes* (69 N. Y. 430), ALLEN, J., refers to it as the prevailing rule in this state in actions of breaches of covenant for quiet enjoyment, and characterizes it as a rule which " is very favorable to the covenantors," and declines to extend it to a case of a breach of contract of sale where the vendor had undertaken to complete and make perfect the title. *Adams v. Conover (supra)* was affirmed in this court (87 N. Y. 422), but the point was not noticed in the opinion, unless included in the exceptions which the learned judge says were " carefully examined without finding sufficient reason for a reversal of the judgment."

But it is unnecessary in this case to consider further the reasons of the rule, or determine its precise limitations. It is evident that it cannot with propriety or justice be applied to a case like the present, where the breach consists of the existence of an unknown public easement or servitude, which all have an equal right to enjoy, including the grantee, and which may be in the nature of a benefit rather than a burden to the premises conveyed. The only practicable test of the extent of the injury which the purchaser then sustains would seem to be the diminution, if any, in the value of the property at the time of the eviction, caused by the assertion by the public of its right to the use of the street, with interest to the time of trial, and the costs of the action, which resulted in the eviction, and interest from the time of the recovery; and this is the rule which we think should have been applied at the trial.

The judgment appealed from should be reversed and a new trial had, with costs to abide the event.

All concur, except FINCH, J., taking no part.

Judgment reversed.